UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID J. EGERMIER, ) | CIV. 11-5095-JLV |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| PENNINGTON COUNTY, a political ) | |
| subdivision of the State of South ) | |
| Dakota, ) | |
| ) | |
| Defendant. ) | |

Pending before the court is defendant's motion for summary judgment. (Docket 18). The court referred defendant's motion to Magistrate Judge Veronica L. Duffy for a report and recommendation. (Docket 43). On March 3, 2014, Magistrate Judge Duffy filed a report recommending the court deny defendant's motion for summary judgment in its entirety. (Docket 44). Defendant timely filed objections and plaintiff filed a response to defendant's objections.[1] (Dockets 45 & 48).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1). The court may

---

[1] Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.

then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

For the reasons stated below, defendant's objections are overruled. The court adopts in full the report and recommendation of the magistrate judge.

**A.   MAGISTRATE JUDGE'S FINDINGS OF FACT**

Neither party objected to the magistrate judge's findings of fact. See Dockets 45 & 48. The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C). Specific facts will be discussed to the extent they relate to defendant's objections.

**B.   PENNINGTON COUNTY'S OBJECTIONS**

Defendant asserts the magistrate judge erred (1) by applying the incorrect legal standard when analyzing its motion for summary judgment; (2) in finding defendant liable using the "Cat's Paw" theory; and (3) in finding Kiel v. Select Artificals, Inc., 169 F.3d 1131 (8th Cir. 1999) and Mershon v. St. Louis Univ., 442 F.3d 1069 (8th Cir. 2006) distinguishable from Mr. Egermier's case. (Docket 45 at pp. 2-8). The court will address each objection separately.

> **1.   Whether the magistrate judge applied the incorrect legal standard when analyzing defendant's motion for summary judgment.**

Defendant contends the magistrate judge erred in refusing to follow binding Eighth Circuit present established in Griffith v. City of Des Moines, 387 F.3d 733 (8th Cir. 2004).  (Docket 45 at p. 2).

After setting forth the material facts relevant to the defendant's motion for summary judgment, the magistrate judge considered what standard applied to the evaluation of Mr. Egermier's claims.  The magistrate judge recognized under Eighth Circuit law, Mr. Egermier could survive a motion for summary judgment in two ways.  First by providing "direct evidence" of discrimination by

> " 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder than an illegitimate criterion actually motivated' the adverse employment action."

(Docket 44 at p. 19) (quoting Griffith, 387 F.3d at 736) (citing Thomas v. First Nat'l Bank of Wynn, 111 F.3d 64, 66 (8th Cir. 1997)).

Absent evidence of direct discrimination, the magistrate judge explained Mr. Egermier could survive summary judgment by raising an inference of discrimination under the McDonnell-Douglas burden shifting analysis.  (Docket 44 at p. 19) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

The magistrate judge explained the difference between the "direct evidence" approach and McDonnell-Douglas:

> The Eighth Circuit applies the "direct evidence" requirement in mixed-motive cases—i.e. those cases where discrimination was "a" motivating factor for an adverse employment decision, but other nondiscriminatory motivations existed concurrently.  The McDonnell-Douglas analysis "creates a shifting set of evidentiary burdens aimed at smoking out the single, ultimate reason for the adverse employment decision."

3

(Docket 44 at p. 21) (citing Griffith, 387 F.3d at 735-36; Wright v. Murray Guard, Inc., 455 F.3d 702, 720 (6th Cir. 2006) (Moore, J., concurring) (internal citations omitted)).

Mr. Egermier's claim of discrimination was premised on the mixed-motives analysis. But argued in the alternative he also satisfied the burden under the McDonnell-Douglas burden shifting framework.

Because Mr. Egermier's claim was premised on the mixed-motives analysis, the magistrate judge turned to a discussion regarding "whether the requirement of 'direct evidence' in order to invoke the mixed motives analysis continues to be applicable after the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)." (Docket 44 at p. 22). The magistrate judge then discussed the history leading up to the Supreme Court's decision in Desert Palace, including the Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) which was legislatively abrogated by the Civil Rights Act of 1991.[2]

Following enactment of the Civil Rights Act of 1991, the Supreme Court considered what effect the Act had on mixed-motive cases. Desert Palace, 539 U.S. at 98. The Court held plaintiffs were not required to produce direct

---

[2]Price Waterhouse held under a mixed-motives scenario an employer could avoid liability under Title VII by showing it would have reached the same decision even absent the discriminatory consideration. Price Waterhouse, 490 U.S. at 242, 261. Congress abrogated this decision by enacting the Civil Rights Act of 1991, which made employment practices motivated even in part by a discriminatory motive unlawful. 42 U.S.C. § 2000e-2(m).

evidence of discrimination but had to prove their case by a preponderance of the evidence using either direct or circumstantial evidence. Id. at pp. 98-101. In making this determination, the Court expressly overruled the Eighth Circuit's decision in Mohr v. Dustrol, Inc., 306 F.3d 636 (8th Cir. 2002), which required a plaintiff to show either direct evidence of discrimination or satisfy the McDonnell-Douglas burden shifting analysis in order to survive a defendant's motion for summary judgment. Id. at p. 95.

The magistrate judge pointed out that despite the Supreme Court's holding in Desert Palace and its express abrogation of the Eighth Circuit's holding in Mohr, the Eighth Circuit "rejected the argument that the Supreme Court in Desert Palace had altered the analysis for summary judgment motions in mixed-motive discrimination cases." (Docket 44 at p. 25) (citing Griffith, 387 F.3d 733).

In Griffith, the Eighth Circuit distinguished Desert Palace on the basis the decision dealt with a post-trial issue regarding when a mixed-motive jury instruction should be given by the court. Griffith, 387 F.3d at 735. The court found Desert Palace "is an inherently unreliable basis for district courts to begin ignoring [the Eighth] Circuit's controlling summary judgment precedents."[3] Id.;

---

[3]As noted by the magistrate judge, the Eighth Circuit's rejection of the mixed-motives analysis established in the Supreme Court's Desert Palace decision is odd given that the Supreme Court expressly abrogated Mohr, an Eighth Circuit summary judgment decision holding that direct evidence of discrimination was required to prove employment discrimination in a mixed-

see also Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1017 (8th Cir. 2005) (finding "Desert Palace really has no direct impact in the summary judgment context"). The Eighth Circuit continues to require a plaintiff to prove discrimination either through "strong (direct) evidence," that is, "evidence that clearly points to the presence of an illegal motive" or through the burden-shifting framework established in McDonnell Douglas.[4]  Griffith, 387 F.3d at 736.

Although the Eighth Circuit refused to adopt the reasoning in Desert Palace,[5] the magistrate judge pointed to cases decided by the First, Second, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits after Desert Palace which have

---

motives case under Title VII.  Desert Palace, 539 U.S. at 96.  See also Klyuch v. Freightmasters, Inc., 393 F. Supp. 2d 788, 793 (D. Minn. 2005) (noting a disagreement with the Eighth Circuit's interpretation of Desert Palace and the Civil Rights Act of 1991); Ludwig v. Church of Epiphany of Coon Rapids, A12-1185, 2013 WL 401361 (Minn. Ct. App. 2013) (noting the holding in Griffith "has been criticized for its articulation of an arguable higher quantum of proof for direct-evidence cases") (citing Torgerson v. City of Rochester, 643 F.3d 1031, 1053 (8th Cir. 2011) (Colloton, J., concurring) (stating that "confusion . . . has arisen from efforts to apply a 'direct evidence' standard")).

[4]The Sixth Circuit Court of Appeals expressly found the Eighth Circuit's holding in Griffith to be inconsistent with the Supreme Court's holding in Desert Palace.  See Wright v. Murray Guard, Inc., 455 F.3d 702, 718 (2006) ("The Eighth Circuit did not explain how [its] holding was consistent with Desert Palace's multiple statements that 'no heightened' or 'special evidentiary showing is required' to proceed on a mixed-motive as opposed to a single-motive theory.").

[5]The Eighth Circuit recently reaffirmed its position that a plaintiff must prove a discrimination claim either using direct evidence of discrimination or under the McDonnell Douglas burden-shifting framework.  See Ames v. Nationwide Mutual Ins. Co., No. 12-3780, 2014 WL 2884081 (8th Cir. 2014).

"recognized that a discrimination plaintiff need not adduce 'direct evidence' in order to avail themselves of the mixed-motive analysis–even at the summary judgment stage." (Docket 44 at p. 26).

Despite the magistrate judge's disagreement with the Eighth Circuit's analysis of mixed-motives claims following <u>Desert Palace</u>, the magistrate judge recognized, "[t]his court is, of course bound by Eighth Circuit precedent." (Docket 44 at p. 27). The magistrate judge then proceeded to analyze Mr. Egermier's claims under both the Eighth Circuit heightened standard and the Supreme Court's more relaxed standard established in <u>Desert Palace</u>. (Docket 44 at p. 27).

The magistrate judge relied on the "direct evidence" analysis in finding there was a genuine issue of material fact regarding whether a discriminatory animus was a motivating factor in defendant's decision to terminate Mr. Egermier's employment. (Docket 44 at pp. 29-35). Specifically, Mr. Egermier asserts the following conversation took place between him and Mr. Tice, his supervisor:

> [Tice] started right off, leaned back in his chair, put his hands behind his head and said, [']I just—the more I thought about it last night, the more angry and then pissed off I became about [the fact that Mr. Egermier failed to teach the second REACT class at the jail and then failed to notify the jail of the same]. I can't believe that you supervised hundreds of individuals in the military but are *too scared* to walk across the jail by yourself.[']

(Docket 44 at p. 30) (citing Docket 30-4 at p. 33).

7

Mr. Egermier then responded:

> [']Barry, . . . I can put up with a lot of things, but I'm not going to have somebody question my military service. . . . [Y]ou told me when I started [teaching REACT] to tell you if there was a problem. And I told you there was a problem, as hard as it was for me to mention about a mental health disability that I don't really necessarily have control of. And, . . . I'm through discussing this . . . . you can keep your [f****g] program . . . . I'm going back to servicing veterans, what I was hired to do.['] And I went back to my office.

Id. (citing Docket 30-4 at pp. 33-34).

Defendant alleges after this encounter, Mr. Egermier went back to his office and began yelling and throwing things around. Mr. Egermier adamantly denies these allegations. About fifteen minutes after Mr. Egermier went back to his office, Deputy Director Charlene Doorn, who had been eavesdropping on the conversation between Mr. Egermier and Mr. Tice, told Mr. Egermier he was on administrative leave. Mr. Egermier then gathered a few things from his office, notified his secretaries he had been placed on administrative leave and left. Approximately twenty minutes later, Mr. Egermier's boss, Ms. Romey telephoned him and fired him for "threats, insubordination, and too military of an attitude."

The magistrate judge found,

> The impetus to fire Mr. Egermier came from his conversation with Mr. Tice. In that conversation, Mr. Tice stated 'I can't believe that you . . . are too scared to walk across the jail by yourself.' This is a clear reference to Mr. Egermier's disability–his Post-Traumatic Stress Disorder

> . . . and the statement is also used in a pejorative manner. Mr. Tice is attempting to devalue a valid, clinical diagnosis of Mr. Egermier's mental condition by summarily dismissing the medical diagnosis and replacing it with his own, namely that Mr. Egermier is merely 'too scared' to walk down a hallway. Furthermore, this statement occurred only minutes before Mr. Egermier was placed on administrative leave, and less than an hour before he was fired.

(Docket 44 at p. 34). Based on Mr. Tice's statement to Mr. Egermier and viewing the facts in the light most favorable to Mr. Egermier, the magistrate judge concluded the "evidence sufficient to establish that a discriminatory animus was in the mix of motives that led Pennington County to fire Mr. Egermier." Id. The magistrate judge also concluded Mr. Egermier satisfied the more stringent standard established by the Eighth Circuit, which requires direct evidence of discrimination. Id.

Defendant argues the magistrate judge erred in finding the term "too scared" was sufficient evidence to employ the "direct" evidence analysis and should have reviewed the claim using the McDonnell-Douglas burden shifting analytical framework. (Docket 45 at p. 4). Defendant's basis for this argument is centered on its belief that "a single isolated offhand comment by Mr. Tice" cannot constitute direct evidence of a discriminatory animus. Id. The court disagrees. First, the court notes the magistrate judge correctly pointed out the dispute between the parties, particularly the variations between defendant's

9

version of events and Mr. Egermier's version of events.[6] The magistrate judge found resolution of these facts required credibility determinations which are not appropriately resolved on a motion for summary judgment. (Docket 44 at p. 33) (citing Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir. 1996) ("At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.")).

Second, as noted by the magistrate judge, the Eighth Circuit found similar isolated statements to constitute direct evidence of discrimination:

> The Eighth Circuit has held statements, such as 'a woman can't handle the job,' 'a woman in a man's job,' 'women in sales were the worst thing,' and a forman's statement that he wanted to have an all-male work crew, to be direct evidence of sex discrimination.

(Docket 44 at p. 34) (citing McCullough v. Univ. of Ark. for Med. Scis, 559 F.3d 855, 860-61 (8th Cir. 2009); Mohr, 306 F.3d at 640, abrogated on other grounds by Desert Palace, 539 U.S. at 95; Simmons v. New Publ. Sch. Dist. No. Eight, 251 F.3d 1210, 1213-14 (8th Cir. 2001), abrogated on other ground by

---

[6]Defendant argues the magistrate judge erred by adopting Mr. Egermier's version of events because "a party may not simply point to unsupported self-serving allegations" but must substantiate those allegations. (Docket 45 at p. 5). Mr. Egermier provided sworn testimony regarding his version of events. This evidence is sufficient to resist summary judgment. See Fed. R. Civ. P. 56(c)(1)(A). The court notes defendant's version of events, like Mr. Egermier's, is supported through sworn testimony of county employees. That defendant has more witnesses than Mr. Egermier does not defeat Mr. Egermier's claim at the summary judgment stage.

Torgersen, 643 F.3d 1031; Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1318, 1324 (8th Cir. 1994)).

      The court agrees with the magistrate judge. The statement made by Mr. Tice to Mr. Egermier, specifically that Mr. Egermier was "too scared" to walk across the jail by himself, is direct evidence of discrimination. This is particularly true when viewing the facts in a light most favorable to Mr. Egemier and when taken in context of the events. The court agrees with the magistrate judge's characterization that Mr. Tice's statement was a direct reference to Mr. Egermier's post traumatic stress disorder and was "clearly meant to demean and belittle Mr. Egermier on account of his disability." (Docket 44 at p. 35). "Mr. Tice's words appear to show resentment over the reasonable accommodation Pennington County provided Mr. Egermier on account of his disability." Id. The court finds the evidence is sufficient to show " 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." Griffith, 387 F.3d at 736 (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)).

      Because the court finds the statements made by Mr. Tice regarding Mr. Egermier's disability are direct evidence of discrimination, it is not necessary to also analyze Mr. Egermier's claims under the McDonnell-Douglas burden-

shifting framework. The court finds the magistrate judge did not apply the incorrect legal standard when analyzing Mr. Egermier's claims. Defendant's objections on this basis are overruled.

### 2. Whether the magistrate judge erred in finding liability using the "Cat's Paw" theory.

Defendant contends the magistrate judge erred "in finding the County liable for Mr. Tice's alleged discriminatory animus by employing the cat's paw theory." (Docket 45 at p. 6-7).

The Eighth Circuit discussed the circuit's rule for "cat's paw" liability as follows:

> This circuit's "cat's paw" rule provides that "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decision maker where the decision maker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." Where a decisionmaker makes an independent determination as to whether an employee should be terminated and does not serve as a mere conduit for another's discriminatory motives, the "cat's paw" theory fails.

Richardson v. Sugg, 448 F.3d 1046, 1060 (8th Cir. 2006) (internal citations omitted) (quoting Dedmon v. Staley, 315 F.3d 948, 949 n. 2 (8th Cir. 2003); Lacks v. Ferguson Reorganized Sch. Dist. R-2, 147 F.3d 718, 725 (8th Cir. 1998)).

The United States Supreme Court held an employer is liable for discrimination when a biased supervisor influences an ultimate decision maker's decision to take an adverse employment action.

12

> [When a supervisor] intends, for discriminatory reasons, that the adverse action occur, he has the scienter required to be liable under USERRA.[7]  And it is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm.  Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that are too remote, purely contingent, or indirect.

Staub. v. Proctor Hosp., 131 S. Ct. 1186, 1192 (2011) (quoting Hemi Group, LLC v. City of New York, 559 U.S. 1, 9 , 130 S. Ct. 983, 989 (2010)).  "The employer is at fault because one of its agents committed an action based on a discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision."  Staub, 131 S. Ct. at 1193.

    Defendant contends there is no evidence in the record that Mr. Tice told Ms. Doorn that Mr. Egermier should be fired for insubordination or that Mr. Tice recommended Mr. Egermier should be fired.  (Docket 45 at pp. 6-7).  As a result, defendant claims "there is no real basis to paint the actual decision maker – Ms. Romey – with Mr. Tice's alleged discriminatory animus."  Id.

    The record contradicts defendant's contention Mr. Tice had nothing to do with the firing of Mr. Egermier.  Mr. Tice admitted during his deposition he was part of the group making the determination regarding Mr. Egermier's employment and that he "[made] a recommendation as to what should happen."

---

[7]Uniformed Services Employment and Reemployment Rights Act of 1994.

13

Docket 32-2 at 101:1-2.  Furthermore, it was Mr. Tice's interaction with Mr. Egermier that led Mr. Egermier to be placed on administrative leave.

As pointed out in the report and recommendation, "[t]here is no evidence in the record that Mr. Tice, in talking to Ms. Doorn or Ms. Romey, ever informed either woman that it was commonplace for he and Mr. Egermier to use curse words when addressing one another . . . [nor] evidence . . . that Ms. Romey knew of Mr. Tice's discriminatory statement." (Docket 44 at p. 39).  However, given Ms. Romey was not present during the conversation between Mr. Tice and Mr. Egermier, the court agrees with the magistrate judge that Ms. Romey "was undeniably influenced by Mr. Tice's report of apparent misconduct on the part of Mr. Egermier and she made her decision to terminate Mr. Egermier based on that report."  Id.

The court finds defendant may be liable if Mr. Egermier can demonstrate at trial that Mr. Tice's discriminatory animus was a proximate cause of his firing.  Staub, 131 S. Ct. at 1192-94.  As noted by the magistrate judge, "[i]ssues of proximate cause are reserved for the jury except under circumstances where no reasonable mind could differ." (Docket 44 at p. 40) (citing Heatherly v. Alexander, 421 F.3d 638, 642 (8th Cir. 2005)).  Based on the facts of this case, the court finds reasonable minds could differ.  Defendant's objection on this basis is overruled.

14

### 3. Whether the magistrate judge erred in finding <u>Kiel</u> and <u>Mershon</u> distinguishable from Mr. Egermier's case.

Defendant contends the magistrate judge erred in finding <u>Kiel</u> and <u>Mershon</u> distinguishable from Mr. Egermier's case. (Docket 45 at pp. 7-8). The magistrate judge found these cases distinguishable because both <u>Kiel</u> and <u>Mershon</u> were analyzed under the <u>McDonnell-Douglas</u> burden-shifting framework when neither plaintiff was able to produce direct evidence of discrimination. (Docket 44 at pp. 40-44). Mr. Egermier has produced direct evidence of discrimination.

Additionally, in <u>Kiel</u>, the plaintiff did not deny engaging in insubordinate behavior. <u>Kiel</u>, 169 F.3d at 1134. Mr. Egermier adamantly denies engaging in insubordinate behavior. The magistrate judge correctly pointed out this creates a genuine issue of material fact.

The magistrate judge found <u>Mershon</u> distinguishable because there was no evidence "the ultimate decision maker's conclusion to ban Mr. Merchon from campus was . . . infected with an underling's discriminatory animus." (Docket 44 at p. 44). This is clearly distinguishable from Mr. Egermier's case. Mr. Tice admitted he was involved in the determination process which led to Mr. Egermier's termination. An issue of material fact exists as to whether Mr. Tice's discriminatory animus was a proximate cause of Mr. Egermier's firing.

The court reviewed the report and recommendation and finds the magistrate judge's analysis of <u>Kiel</u> and <u>Mershon</u> is an accurate and thorough

15

recitation of the law. The court finds the magistrate judge did not error in finding Kiel and Mershon distinguishable from Mr. Egermier's case. Defendant's objection is overruled.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's objections (Docket 45) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 44) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion for summary judgement (Docket 18) is denied.

Dated September 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE